IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Criminal No. 12-00031 |
| v. | ) | Civil No. 15-01014 |
| | ) | |
| MICHQUEL CURINGTON, | ) | **Judge Mark R. Hornak** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Defendant Michquel Curington pleaded guilty to one count of distribution of heroin and was sentenced to a term of 150 months imprisonment followed by 8 years of supervised release. *See* ECF No. 125. Just under one year after sentence was imposed, Mr. Curington filed a Motion to Vacate his guilty plea and correct his sentence under 28 U.S.C. § 2255. *See* ECF No. 130.[1] In this motion, Mr. Currington alleges (1) that his federal sentence was unlawful because a prior state conviction (which enhanced his federal sentencing guideline calculation) was unconstitutionally obtained, (2) that federal and state prosecutors violated their obligations under *Brady v. Maryland,* 373 U.S. 83 (1963) for failing to turn over in this proceeding evidence of the state court's unconstitutional actions, and (3) that his federal and state counsel were ineffective for failing to challenge the validity of the state conviction. In response, the Government filed a

---

[1] The ECF references in this Opinion are to the Docket at 2:12-cr-0031. Mr. Curington also filed Motions to Supplement his Motion to Vacate at ECF Nos. 137 and 165. The Court has considered the substance of the Motions to Supplement for purposes of this Opinion.

Motion to Dismiss Mr. Curington's motion, arguing that the § 2255 petition is barred by the collateral attack waiver agreed to in Mr. Curington's plea agreement. *See* ECF No. 139.[2]

### A. § 2255 and Prior State Convictions

First, irrespective of Mr. Curington's § 2255 waiver, Mr. Curington's attempts to challenge the validity of his state conviction in a § 2255 petition are barred by *Daniels v. United States*, 532 U.S. 374, 382 (2001). In *Daniels*, the Supreme Court held that (with one limited exception) a defendant may not "challenge his federal sentence through a motion under 28 U.S.C. § 2255 on the ground that his prior convictions were unconstitutionally obtained." *Daniels*, 532 U.S. at 376. As Mr. Curington's briefing explains, this is exactly the intent of his Motion: "In his § 2255, Mr. Curington asserts that he is not challenging the merits of the Federal Conviction for which he is presently incarcerated. Instead, he contends that because a former conviction for which he is no longer incarcerated or under any parole restraint was tainted by a Constitutional infirmity, and that conviction was improperly considered when he was sentenced for his instant offense, thus, his current term of incarceration violates his Constitutional rights." ECF No. 131 at 18. Under *Daniels*, Mr. Curington cannot challenge his federal conviction by trying to prove the unconstitutionality of a prior state conviction. *Daniels*, 523 U.S. at 382 ("If [ ] a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse. The presumption of validity that attached to the prior conviction at the time of

---

[2] The Court appointed counsel for Mr. Curington at ECF No. 140. That counsel investigated Mr. Curington's arguments but "determined in the exercise of his professional judgment that . . . the issues raised in the Defendant's pro-se Motion to Vacate are without any genuine arguable merit." *See* ECF No. 160 at 2–3; ECF No. 161 at 2. Still, Mr. Curington pressed on, and asked for the appointment of new counsel. *See* ECF No. 153. It appears that the basis for that Motion is that counsel reached the same conclusion as reached by the Court in this Opinion. The Court finds no basis to appoint new counsel, and that Motion is denied.

sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255.").

There is one limited exception to *Daniels* but Mr. Curington has not shown any reason why it should be applied here. *Daniels* explained that "there may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own." *Id.* at 383. In such situations, a petitioner *might* be able to challenge his prior state convictions through § 2255 petition—*Daniels* specifically declined to rule on the issue. *Id.* at 383–84. However, as in *Daniels* "[n]o such claim is made here." *Id.* at 384 Presumably, Mr. Curington "could have pursued his claims while he was in custody on those convictions" through the appropriate state appellate, state post-conviction, or federal post-conviction channels.³ *Id.* Mr. Curington provides "no indication that petitioner did so or that he was prevented from doing so by some external force." *Id.* As such, the *Daniels* exception does not apply here; Mr. Curington may not challenge the validity or constitutionality of his prior state court sentences through his current § 2255 Motion.

In substance, all of Mr. Curington's § 2255 claims challenge the validity of his underlying state court convictions. Facially, however, Mr. Curington also asserts a violation of the *federal* prosecutor's *Brady* obligations and a claim for ineffective assistance of his *federal* counsel. Though these claims are, at heart, still challenges to Mr. Curington's state conviction, they are asserted as challenges to what happened in *federal* Court. There is good reason to believe that such claims are still barred by *Daniels*, but to the extent they are *not*, the claims still fail. As explained below, Mr. Curington's "*Brady*" claims are barred by his § 2255 waiver. Mr. Curington's ineffective assistance of counsel claims may or may not be barred by his § 2255 waiver, but either way, they are substantively without merit.

---

³ That is, through § 2254 rather than § 2255, after exhausting his available state remedies.

3

### B. § 2255 Waivers

"Criminal defendants may waive both constitutional and statutory rights," including the right to collateral relief under § 2255, "provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008). "Thus, we will enforce appellate or collateral-attack waivers when they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015), *cert. denied*, No. 15-1028, 2016 WL 632623 (U.S. June 20, 2016).

Mr. Curington acknowledges that he entered into a written guilty plea that "acknowledge[d] responsibility for the conduct charged." ECF No. 131 at 12. Nonetheless, Mr. Curington alleges that his plea agreement (and thus, presumably, the waiver) was not entered into knowingly and voluntarily because he was unaware that (as he alleges) two corrupt state detectives had made misrepresentations and fabricated evidence in a prior state proceeding. *See* ECF No. 131 at 30–32. Mr. Curington's argument is really about the potential invalidity of his prior *state* guilty plea, not about whether he knowingly and voluntarily entered into the *federal* guilty plea here. The "knowingly and voluntarily" inquiry is not an examination of whether a defendant has adequately internalized the legal or constitutional validity of every prior event that may have an impact on his eventual sentence (such as a prior state guilty plea, here); instead, it is an examination of whether a defendant knew the provisions of the plea that he was agreeing to, and did so of his own volition. *See United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) ("Waivers of the legal consequences of unknown future events are commonplace" and their "prospective nature" does not "render a defendant's act unknowing.").

4

Although "a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary," the district court still has "an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *United States v. Mabry*, 536 F.3d 231, 237–38 (3d Cir. 2008) ("Compliance with this obligation aids our review and ensures that the defendant's rights are carefully considered."). Here, the record plainly reflects that Mr. Curington knew about the collateral waiver provision in the plea agreement, affirmed his understanding of this provision, and voluntarily entered into the plea agreement with the Government.

After the Court affirmed Mr. Curington's competence and affirmed his understanding of his legal and constitutional rights, the Government's lawyer explained on the record that, through the plea agreement, Mr. Curington "waives his right to collaterally attack his conviction or sentence under federal law." ECF No. 156 at 24–25. Then, the Court affirmed Mr. Curington's understanding of these provisions:

> THE COURT: Mr. Curington, have you heard the essential terms of the plea agreement, as reviewed by. Mr. Conway?
> THE DEFENDANT: Yes.
> THE COURT: Mr. Curington, has Mr. Conway correctly stated the plea agreement, as you understand it?
> THE DEFENDANT: Yes.
> THE COURT: Mr. Curington, does the plea agreement set forth your entire understanding and agreement with the government concerning the disposition of the charges against you?
> THE DEFENDANT: Yes.
> THE COURT: Do you have any other agreements or understandings with the United States government concerning the charges pending against you that aren't set forth in the plea agreement?
> THE DEFENDANT: No, sir.
> THE COURT: Mr. Curington, do you understand that, ordinarily, you or the government would have the right to appeal from your conviction or any sentence the Court imposes. However the Court notes that in the provisions of the plea agreement, you and the government have agreed that you would waive, that

> means give up, your right to take a direct appeal from your conviction or your sentence subject to the following exceptions. One, if the United States appeals from the sentence imposed by the Court, you may then take a direct appeal from that sentence in those circumstances. Do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Do you also understand you may take a direct appeal from your sentence only on the following grounds. One, that the sentence exceeds the applicable statutory sentencing limits set forth under federal law or the sentence that would be imposed by the Court unreasonably exceeds the Guideline range determined by the Court under the Sentencing Guidelines?
> THE DEFENDANT: Yes.
> THE COURT: To repeat, by these provisions of the plea agreement, you are giving up the right to take an appeal from the validity of your plea of guilty and judgment of guilt and except as specifically set forth in the plea agreement any right to take a direct appeal from your sentence. Do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Mr. Curington, do you also understand that under the provisions of the plea agreement, you will have also waived, that means given up, the right to file a motion to vacate your sentence under Title 28 of the United States Code, Section 2255, along with the right to file any other type of legal proceedings, including the collateral proceeding that attacks your conviction or sentence. Do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Mr. Curington, has anyone made any threats to you or anyone else that would cause you to give up or waive these rights?
> THE DEFENDANT: No.
> THE COURT: Has anyone made any promises to you, other than the promises that are in the plea agreement, that is causing you to waive or give up these rights?
> THE DEFENDANT: No.

ECF No. 156 at 26 –28. Again later in the proceeding, the Court affirmed that Mr. Curington voluntarily signed his plea agreement and that this signature was intended "to confirm, in writing, that you were agreeing to all of the terms of the plea agreement letter." *See* ECF No 156 at 30–31. Indeed, at the conclusion of the hearing, Mr. Curington's attorney explicitly raised his own personal opposition to § 2255 waivers being applied to later claims for ineffective assistance of federal counsel:

> Your Honor, just one. The plea agreement at, I believe, paragraph A8, and as discussed by the Court with the defendant, contains 2255 waiver language. This language has been in use by the U.S. Attorney's Office in, essentially, every written plea agreement for a number of years. That language and the effects of

> that language, perhaps, more precisely, has come under increasing attack because of -- the conflict of interest that is potentially created between the defendant and myself, in that he, essentially, pro-actively is waiving his right under federal law, a right provided under federal law, to challenge his conviction and sentence if there was an impropriety or some deficiency, including a deficiency of effectiveness of counsel. I've discussed that provision with the United States Attorney and it remains in the plea agreement.
>
> . . .
>
> I have done my best to explain the consequences of that language. I believe the law in this Circuit is that if there is a manifest injustice worked by enforcement of that language, that that provision would not preclude a 2255 claim, if, in fact, the defendant was prejudiced by the ineffectiveness of counsel in a material way. And I simply note that for the Court's edification, Your Honor, that, that if, in fact, I've missed something, then it's on me, that I'm ineffective for proceeding in this fashion, in this proceeding, with that language in there. I don't believe that there is any basis to do that, but that's really the essential problem with that language, that I am judging my own actions. And, in a number of ways, it doesn't present an argument that there is a conflict of interest with the language in there. I simply note that for the record, in order to protect my client.

ECF No. 156 at 40. In response to this observation, the Court affirmed with Mr. Curington's counsel that he was not currently acting under a conflict of interest, that he had carefully "reviewed with Mr. Curington, line by line, each and every provision of the plea agreement" and that there were no limitations placed upon counsel's professional judgment or the zealous and effective representation of Mr. Curington's interests. ECF No. 156 at 42–44. Further, the Court reaffirmed with Mr. Curington that he himself understood and accepted the collateral-review waiver provisions in the plea agreement:

> THE COURT: Do you also understand, sir, that if I accept your plea agreement, you will have given up your right to file any other challenge to your conviction or sentence. And this includes any, any type of legal proceeding under federal law, including Title 28, United States Code, Section 2255, that would seek to challenge or overturn your conviction or sentence. Do you understand, if I accept the plea agreement, you are giving up all those rights?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that if I accept the plea agreement and if the United States believed that you took actions contrary to the plea agreement, they could ask this Court or another Court that would be applicable to enforce all of the terms of the plea agreement. Do you understand that?
> THE DEFENDANT: Yes.

7

> THE COURT: Are you in any way, Mr. Curington, dissatisfied with the legal work that Mr. Cogan has done for you?
> THE DEFENDANT: No, sir.
> THE COURT: Do you believe, based on your interactions with Mr. Cogan, that he in any way has held back, or, for want of a better term, pulled his punches, that he's given you anything other than his complete, unvarnished legal advice?
> THE DEFENDANT: No, sir.
> THE COURT: Do you have any questions or concerns about Mr. Cogan's representation of you in these proceedings, having anything to do with these proceedings?
> THE DEFENDANT: No, sir.

ECF No. 156 at 44–45.

Plainly, both the Court and Mr. Currington's counsel "explained the waiver to [Mr. Curington] and he signed the agreement, acknowledging that he understood its terms." *See Fazio*, 795 F.3d at 425. Further, the Court specifically discussed the effects of the collateral waiver with Mr. Curington in detail, and he affirmed his understanding of that provision and that he was agreeing to this condition. *See United States v. Chavez Pereira*, 525 F. App'x 120, 122 (3d Cir. 2013). Likewise, the Court affirmed that Mr. Curington voluntarily entered into the plea agreement and accepted its collateral-review waiver without coercion or external promise. *See Fazio*, 795 F.3d at 425–6. *See also Chavez Pereira*, 525 F. App'x at 122–23 ("In the instant case, [defendant] knowingly and voluntarily signed the plea agreement which clearly informed him that he was waiving his right to direct and collateral appeals under certain conditions. Moreover, during [defendant's] plea hearing, the Court discussed the effects of the appellate waiver with [defendant] in detail. [Defendant] stated to the Court that he had discussed the appellate waiver with counsel, and was duly informed of its consequences. Therefore, there are no viable appellate issues with respect to the appellate waiver."); *United States v. Ochoa-Hernandez*, 323 F. App'x 134, 137 (3d Cir. 2009) ("After reviewing the transcript of the plea colloquy, we conclude that the District Court thoroughly advised [defendant] of all of the above

issues, that [defendant] indicated that he understood the consequences of his plea, and that he entered his plea knowingly and voluntarily. Therefore, this issue lacks merit").

As such, the collateral waiver in Mr. Curington's plea agreement bars his § 2255 claims unless he can show that enforcing the waiver would work a "miscarriage of justice." The Court should apply a "common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced," *Mabry*, 536 F.3d at 242, but the exception, "will be applied sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). Further, before concluding that a waiver *does* work a miscarriage of justice, the Court should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Mabry*, 536 F.3d at 242.

With respect to Mr. Curington's *Brady* claims, he does not argue that his waiver works a miscarriage of justice and, bearing in mind the *Mabry* considerations, it does not appear to this Court that it would. Notably "[t]his is not a case where enforcing a collateral attack waiver would result in barring an appeal expressly preserved in the plea agreement . . . [n]or is this a case raising allegations that counsel was ineffective or coercive in *negotiating* the very plea agreement that contained the waiver." *Mabry*, 536 F.3d 231, 243 (3d Cir. 2008) (explaining that such cases can constitute a miscarriage of justice) (emphasis added). Instead, Mr. Curington asserts that the Government violated its *Brady* obligations by failing to turn over information about the conduct of the aforementioned state detectives in prior state court cases, and that his counsel rendered ineffective assistance by failing to inquire into the alleged misconduct or corruption that (he argues) underlies his prior state conviction. The brunt of these claims is an

9

attack on the prior state court conviction, and the impact of that *state* conviction on his eventual *federal* sentence. Especially in light of the high bar necessary to establish a "miscarriage of justice," it would not work a miscarriage of justice to enforce Mr. Curington's agreed-to § 2255 waiver against his *Brady* claims.

### C. § 2255 Waivers and Ineffective Assistance of Federal Counsel

It would not work a miscarriage of justice to enforce Mr. Curington's § 2255 waiver against his *Brady* claims. At least one court, however, has held that it *would* be a miscarriage of justice to enforce a § 2255 waiver against a defendant's "right to file a motion collaterally attacking his sentence to the extent any such motion is based upon ... alleged ineffective assistance."[4] *Williams v. United States*, 2014 WL 4060263, at *14 (W.D. Pa. Aug. 14, 2014). Whatever the merits of that question, the Court need not determine here whether or not it could be (by definition) a miscarriage of justice to enforce a § 2255 waiver against a defendant's ineffective assistance of counsel claims, because Mr. Curington's ineffective assistance claims are without merit.

Mr. Curington asserts that "his Federal attorney failed to investigate prosecutor 'Brady' violations" and "failed to undertake an independent investigation into possible mitigating evidence concerning the 'State' priors used to enhance Mr. Curington's Federal sentence, as a Career Offender and with the enhancement applicable under 21 U.S.C. § 851, and was therefore unable to offer any mitigating evidence concerning the State priors that resulted from police misconduct/ Corruption." ECF No. 131 at 37. Both arguments boil down to the allegation that

---

[4] However, other courts in this District have concluded that it is perfectly appropriate to enforce a collateral waiver in such situations. *See*, e.g., *Gerideau-Williams v. United States,* 2015 WL 8528404 (W.D. Pa. Dec. 11, 2015);*United States v. Gardner*, 2015 WL 4714927 (W.D. Pa. Aug. 7, 2015); *United States v. Shebetich*, 2015 WL 2106013 (W.D. Pa. May 6, 2015); *Stitt v. United States*, 2015 WL 1489477 (W.D. Pa. Mar. 31, 2015); *United States v. Brownlee*, 2014 WL 3735583 (W.D. Pa. July 28, 2014); *United States v. Freeman*, 2014 WL 3419946 (W.D. Pa. July 11, 2014); *United States v. Joseph,* 2014 WL 2002280 (W.D.Pa. May 15, 2014).

Mr. Curington's attorney failed to attack the validity of his prior state conviction at sentencing, which then resulted in the improper qualification of Mr. Curington as a Career Offender under U.S.S.G. § 4B1.1. But Mr. Curington's sentencing counsel was certainly not acting unreasonably in *not* challenging the validity of Mr. Curington's underlying state sentence. The Supreme Court has held that "a defendant in a federal sentencing proceeding may [not] collaterally attack the validity of previous state convictions that are used to enhance his sentence" unless "(1) he alleges the 'unique constitutional defect' that he was denied the right to counsel under *Gideon v. Wainwright*, 372 U.S. 335 (1963), in the proceedings leading to such prior conviction, or (2) the statute under which he is currently being sentenced explicitly provides for the ability to collaterally attack 'prior convictions used for sentence enhancement purposes.'" *United States v. Napolitan*, 2016 WL 3902164, at *3 (3d Cir. July 19, 2016) (quoting *Custis v. United States*, 511 U.S. 485, 487 (1994)). *See also United States v. Thomas*, 42 F.3d 823, 824–25 (3d Cir. 1994) (applying *Custis* to bar a defendant's challenge to his federal sentence based on a constitutional defect in a prior state conviction because he alleged no *Gideon* violation and the applicable U.S. Sentencing Guideline lacked statutory authorization for such a challenge). Mr. Curington was represented by counsel at the state proceeding, and the statute under which he was sentenced in this Court does not provide for the ability to attack the prior state conviction. As such, it would have been contrary to established Supreme Court precedent for Mr. Curington's sentencing counsel here to try to challenge the validity of a prior state court conviction at the federal sentencing hearing[5]. Mr. Curington's sentencing counsel

---

[5] Mr. Curington has now filed yet another *pro se* motion, this time for leave to supplement his § 2255 Motion. ECF No. 165. That Motion alleges several grounds, principally that his federal trial counsel was ineffective in not pressing counsel for the Government to faithfully follow September 24, 2014 and May 10, 2010 Department of Justice policy statements that Mr. Curington says would have resulted in the Government not filing an information pursuant to 21 U.S.C. §851, which impacted his sentence. As a matter of law, those policy statements provide no possible avenue of relief for Mr. Curington. First, as to the 2014 policy statement, it was not issued until *after* he was sentenced in this case. Second, Circuit precedent is stable and direct—such policy statements create no

11

cannot not be deemed to be ineffective for following the law. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Indeed, it might well have violated counsel's duty of candor to the Court, to the Bar, and to Mr. Curington himself to advance such an untenable petition.

## D. Certificate of Appealability

Finally, no certificate of appealability should issue in this case. A petitioner may only appeal "the final order in a proceeding under section 2255" if a judge "issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when a petition is denied on procedural grounds, a certificate of appealability may issue only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. Jurists of reason would not debate *Daniels*'s prohibition on § 2255 attacks of state convictions, the effect of Mr. Curington's § 2255 waiver, or the lack of merit in Mr. Curington's ineffective assistance of federal counsel claims. Therefore, no certificate of appealability will issue.

---

enforceable rights for a defendant. *U.S. v. Ruchlewicz*, 610 Fed. App'x. 204, 205 (3d Cir. 2015); *U.S. v. Wilson*, 413 F. 3d 382, 388-89 (3d Cir. 2005). Thus, under *Strickland*, there is no prejudice as a matter of law if Mr. Curington's counsel did not press counsel for the Government in such regards. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The balance of the "claims" Mr. Curington asserts in his Supplement, ECF No. 165 are barred by his § 2255 waiver for the same reasons as noted above as to his other claims not sounding in "ineffective assistance." Therefore, his Motion to Supplement is denied on the basis that allowing it would be futile.

## CONCLUSION

Mr. Curington's Motion to Vacate at ECF No. 130 is DENIED; Mr. Curington's Motion to Supplement at ECF No. 137 is DENIED; Mr. Curington's Motion to Appoint Counsel at ECF No. 153 is DENIED; Mr. Curington's Motion to Supplement at ECF No. 165 is DENIED; and the Government's Motion to Dismiss at ECF No. 139 is DENIED WITHOUT PREJUDICE AS MOOT.

Mark R. Hornak
United States District Judge

Dated: September 12, 2016